UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/2014

BARCLAY H. GRIFFITHS,

                            Plaintiff,

               -against-

BEVERAGE MARKETING CORP. OF
NEW YORK, doing business as Beverage
Marketing Corporation, BMC STRATEGIC
ASSOCIATES, BMC FINANCIAL
ADVISORS, BMC INFORMATION
SERVICES,

                        Defendants.

No. 14-CV-137(VEC)

MEMORANDUM OPINION
AND ORDER

VALERIE CAPRONI, United States District Judge:

     Plaintiff Barclay Griffiths brings this action against Beverage Marketing Corp. of New

York ("BMC") and its affiliates, asserting that he is entitled to bonuses for two transactions that

he allegedly spearheaded while he was a Director at BMC.  Defendants move to dismiss the case

under Fed. R. Civ. P. 12(b)(6), asserting that Griffiths was not entitled to a bonus for either

transaction.  Defendants further assert that Griffiths improperly included BMC's operating

divisions, which are not separate corporations, among the named defendants.  For the following

reasons, Defendants' motion to dismiss the First Amended Complaint ("FAC") is DENIED IN

PART as to BMC and GRANTED IN PART as to all claims against BMC Strategic Associates,

BMC Financial Advisors, and BMC Information Services.

## BACKGROUND[1]

Griffiths, formerly a Managing Director in BMC's Financial Services operating division,

was a beneficiary of BMC's 2011 New Client Bonus Policy, which indicated that employees

would receive a bonus for bringing in or fostering a project from a client who had not previously

done business with BMC.  FAC Ex. B.  Additionally, on or about January 1, 2012, Griffiths and

BMC executed an agreement that would entitle Griffiths to a bonus for "successful M&A

transactions" that generated client fees greater than $150,000 (2012 Bonus Policy).

Two transactions are relevant to this case.  One, described as the "Ohio Initiative

Project," is alleged to be an "M&A Transaction" that netted BMC over $150,000 in client fees.

FAC ¶¶ 24, 27.  The parties agree that BMC did not pay Griffiths a bonus for this project.  The

second, referred to as the "Sun-Rype Project," was allegedly covered by the 2011 New Client

Bonus Policy.  FAC ¶ 22.  As to Sun-Rype, Griffiths received a bonus for its first phase but not

its subsequent phase.  *Id.*  Griffiths alleges that he is owed a bonus for all work contemplated by

the initial engagement; BMC contends that the 2011 New Client Bonus Policy explicitly

excludes work done after the first phase of a new engagement.  *Id.*

Prior to filing this lawsuit, the parties exchanged letters laying out their respective

positions regarding whether Griffiths was owed a bonus.   FAC ¶¶ 16-20.  After discussions

with BMC broke down, Griffiths was fired in September 2013.  FAC ¶ 26.  Griffiths brought this

action in January 2014 and filed the FAC in March; BMC moved to dismiss in April 2014.

---

[1] The Court presumes that the facts alleged in the Complaint as true at this stage in the litigation.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

**DISCUSSION**

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Inc.*, -- F.3d ---, 2014 WL 1704474, at \*5 (2d Cir. May 1, 2014) (citation omitted).

As a threshold matter, BMC attached a number of documents to its motion to dismiss the FAC. *See* Sudano Decl. Exs. 1-3, Brady Decl. Ex. A. Aside from Griffiths' Bonus Policy, which is not only critical to the FAC but was actually attached to the FAC as Exhibit A, the Court has given no consideration to these documents. "Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

**I.  Griffiths adequately alleges that BMC owes him a bonus for the Ohio Initiative Project**

Griffiths asserts that he is owed a bonus for the Ohio Initiative Project because it was an M&A transaction from which BMC collected fees in excess of $150,000. To prevail on this motion to dismiss, Griffiths must plausibly allege "'(1) the existence of an agreement, (2)

3

adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  Griffiths clearly alleges the existence of (1) a contract, FAC ¶¶ 6-9; (2) a transaction triggering BMC's obligations under the contract, FAC ¶¶ 16-18, 24; (3) a breach of the contract, FAC ¶¶ 30-33; and (4) damages resulting from BMC's breach, FAC ¶ 34.  The only issue for purposes of the motion to dismiss is whether his allegations are plausible.

BMC asserts that "the documentary evidence establishes that the Ohio Initiative was a consulting project" rather than an M&A transaction.  BMC Br. 9.  This argument, on its face, concedes that determining whether the Ohio Initiative Project is an M&A transaction requires a departure from the four corners of the FAC.  The FAC itself highlights numerous characteristics of the Project that strongly suggest it was an "M&A Transaction," including the fact that it included a client's acquisition of a new business line, the engagement letter's discussion of a transaction and its closing, and the fact that BMC's compensation was dependent on the transaction's closing.  FAC ¶ 24.

Second, BMC contends that the Ohio Initiative Project predated the implementation of the M&A Transactions Bonus Policy and, therefore, that it could not be covered by the Policy. BMC Br. 9-10.  In support of this factual claim, BMC relies on a letter attached to the FAC. BMC Br. 10 (citing FAC Ex. C).  But the letter (which was signed by Plaintiff) does not support the argument that transactions commenced before 2012 were not intended to be included in the bonus calculation.  FAC Ex. C.  Although evidence ultimately adduced may support BMC's

4

position, that determination cannot be made in the context of a motion to dismiss.  In short, Court

I adequately alleges a breach of contract in connection with the Ohio Initiative.[2]

## II.  Griffiths adequately alleges that BMC owes him a bonus for the Sun-Rype Project

Griffiths also alleges that, pursuant to the 2011 New Client Bonus Policy, BMC owes

him a bonus for the revenue generated by the second phase of the Sun-Rype Project.  BMC

moves to dismiss because the policy provides that "[a]fter [the] initial project is complete, any

follow-up work is not covered by this policy."  Both parties acknowledge that Griffiths was paid

for the first phase of the project and not for the second phase.  The parties dispute, however,

whether the second phase of the contract was a part of the "initial project" covered by the New

Client Bonus Policy.

At the pleadings stage, the Court assumes the FAC's plausible factual allegations are

true.  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  The FAC

alleges that "the Sun-Rype contract expressly provided for the work to be done in two phases, so

there was no an additional second phase that was outside the scope of the original engagement."

FAC ¶ 22.  The New Client Bonus Policy does not, on its face, prohibit an "initial project" from

including multiple stages.  FAC Ex. B.  The Court therefore concludes that Griffiths has stated a

plausible claim in Count II of the FAC.

---

[2]      Because the Court finds that the FAC adequately alleges a breach of contract it is unnecessary to address
Griffiths' alternative allegation that under another provision of the 2012 Bonus Agreement revenue from Ohio
Initiative Project should have been included in BMC's calculations of the year-end profits of the Financial Services
operating division, which would have made the division profitable and entitled Griffiths to a year-end bonus.
Although BMC argues that the division did not earn a profit and therefore that BMC did not owe Griffiths a year-
end bonus, BMC Br. 11 (citing Sudano Decl. Ex. 3), for purposes of the motion to dismiss, the FAC adequately
alleges that the Ohio Initiative Project's revenue should have been attributed to Griffiths' division.

**III. Griffiths does not state a cause of action against non-BMC defendants**

Griffiths does not allege any wrongful conduct by any non-BMC defendant and did not respond to Defendants' allegations that only BMC is a suable entity.  As a result, the FAC is dismissed as against all defendants other than BMC.

## CONCLUSION

For the foregoing reasons, BMC's motion to dismiss (Dkt. 22) is DENIED as to the claims against Beverage Marketing Corp. of New York and GRANTED as to the other defendants.  The Clerk of the Court is further directed to terminate BMC's motion to dismiss Griffiths' initial complaint (Dkt. 6) as moot.

**Date:  May 9, 2014**
       **New York, NY**                                 **VALERIE CAPRONI**
                                                        **UNITED STATES DISTRICT JUDGE**